WILLIAM M. NARUS
Acting United States Attorney
District of Oregon

JENNIFER IVERS
ADAM ALEXANDER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: jennifer.ivers@usdoj.gov and adam.alexander@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JUSTIN ABBOTT FACEY,<br><br>　　　　　Defendant. | No. 3:25-cr-00033-SLG-KFR |

**MOTION FOR PRETRIAL DETENTION HEARING AND DETENTION PENDING TRIAL**

　　　COMES NOW the United States by and through undersigned counsel to move for the defendant's detention pending trial in this matter. See United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay."). As discussed in further detail below, the United States moves for a detention hearing, a three-day continuance of the detention hearing, and a medical exam following the defendant's initial appearance pursuant to 18 U.S.C. § 3142(f)(2).

## I. PROCEDURAL POSTURE

The Defendant has been charged by the Grand Jury with maintaining a drug-involved premises in violation of 21 U.S.C. § 856; possession of a firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and possession of firearms by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). ECF doc. 2. The United States is entitled to a detention hearing in this matter pursuant to 18 U.S.C. § 3142(f)(1)(B), (C), (E) and the defendant is subject to the rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community given the probable cause determination that he has committed both an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and an offense under section 924(c). 18 U.S.C. § 3142(e)(3)(A), (B). For reasons described in further detail below, the United States does not believe that the Defendant can rebut this presumption under any circumstances and that there are facts that require detention independent of the statutory presumption.

## II. FACTS

The Defendant is a licensed attorney currently suspended from the practice of law. See Supreme Court No. S-19390 (Order of Interim Suspension) dated Feb. 24, 2025. His suspension arose from 13 bar grievances and six fee arbitration matters arising in a three-year period. Id. During that time and continuing through the date of his arrest, the defendant consciously and deliberately used his license to practice law as a shield for his own egregious criminal conduct and that of others. Having consciously adopted the persona of a self-described "cartel attorney" and fueled by a spiraling addiction to

methamphetamine and compulsive sexual misconduct, the defendant fully committed to the bit, engaging in a crime spree threatening the safety of the community and giving rise to serious concerns regarding his risk of flight following his apprehension.

### a. The Defendant Endangers the Safety of the Community

In June 2023 law enforcement became aware that the defendant was actively marketing his license to practice law in Alaska as a means of facilitating the operation of large-scale drug-trafficking organization (DTO). That investigation involved the review of a significant volume of communications and ultimately resulted in the indictment of over 60 individuals in the District of Alaska to date. In the course of that investigation, law enforcement became aware of communications between the defendant and the head of that DTO, Heraclio Sanchez-Rodriguez ("HSR"), who was at that point imprisoned in California and using a contraband cellphone to direct the DTO's activities in Alaska.

On June 5th, 2023 the defendant began communicating with HSR in a conversation where the leader of the DTO boasted of the scope of his drug trafficking activities in Alaska. Several days later, Anchorage Police Department officers attempted to arrest a co-conspirator of HSRs who initially managed to escape apprehension, after which HSR told other members of the DTO that the defendant had assisted in the co-conspirator's efforts to avoid arrest.

Several days later, the defendant exchanged text messages with HSR in which the two discussed efforts to smuggle that co-conspirator out of the District of Alaska:

**SN 3532 - JF**: May have someone for your trip, tomorrow.

> **SN 3533 - JF**: If it has to be tonight, I's coming up empty.
>
> **SN 3607 - HSR**: Sorry fell asleep. We can do it tomorrow or Sunday let me contact my people to be ready to take her out the country
>
> **SN 3711 – JF**: Ok. I have calls into several possible folks. One guy said he can make Redbank, Montana in one shot out of Merril [sic] Field, then a fuel stop and a second hop to Oregon, but his plane is tied up flying tourists out to the glaciers and he's not sure when he could sneak in
>
> **SN 3715 – JF**: a trip south

Following this conversation, the defendant and HSR had a telephone conversation (SN 4516) in which the defendant elaborated on his connections with individuals in Alaska that could potentially assist in flying people out of state and offered to contact a pilot on behalf of the DTO in order to smuggle the DTO co-conspirator out of the District in an effort to avoid apprehension.

Early in the blossoming relationship between the defendant and the imprisoned DTO leader he was eager to service, HSR provided the defendant with fentanyl pills delivered to his residence. After receiving the fentanyl, presumably for distribution purposes given the fact that the defendant primarily abuses methamphetamine, the defendant messaged HSR (SN 7165) "Thank you. Much appreciated. I feel funny not paying – we can credit it for when you need some legal work done, if you want? Setting up businesses is smart, BTW. Make each of these girls a little revenue laundromat." In the context of other communications (SN 7107), the "little revenue laundromat" comment

by the defendant to HSR was a reference to a scheme discussed by the two regarding the laundering of drug proceeds by means of fraudulent CashApp accounts.

In subsequent conversation the defendant also solicited the assistance of HSR and the DTO to assault an individual with whom the defendant had a grievance. HSR in fact took steps to arrange for a subordinate to shoot the individual, an effort fortunately disrupted by law enforcement.

HSR was arrested at the end of June, 2023, but the investigation into the DTOs activities, and by extension the defendant's continued. Law enforcement interviewed a number of individuals who had been victimized by the defendant in his role as their attorney, including CD-1 who in September of 2023 described the defendant as "a drug addict, a pig, and a disgusting slob" who had coerced sex acts from CD-1 in payment for his purported legal representation. CD-1 described that the defendant maintained a drug premises, used methamphetamine, and maintained a young woman as a "housekeeper" who he paid with controlled substances for her services. CD-1 described the defendant's methamphetamine addiction as extreme and told investigators that he used up to an ounce per day. CD-1 allowed investigators to review her text message communications with the defendant, in which the defendant in plain language clearly described the terms of his sexual exploitation of his client. The defendant's exploitation of his clients was not limited to his own grotesque sexual gratification but extended in another instance (CD-3) to telling one of his client's that the defendant was in contact with the DEA when no such contact had ever occurred.

Another putative client (CD-4) was in fact an individual who had dealt narcotics to the defendant, and that on one occasion in November 2024 delivered an ounce of methamphetamine to his residence for the defendant's personal use, where she saw two young women who appeared to CD-4 to be minors. On that occasion, CD-4 described seeing the defendant crush and use a homemade "hot rail" device to vaporize and then snort the crushed methamphetamine. Investigators later recovered that device from the defendant's residence during the execution of the April 2025 search warrant:



Over the course of years, investigators have painstakingly reviewed the defendant's communications subject to onerous and time-intensive filter review protocol necessary to address the defendant's bad faith weaponization of his legal practice. The United States has direct evidence of the defendant's drug possession, distribution, and exploitation of drug addicted individuals in his own words, from the beginning of his involvement with the HSR DTO in June 2023 to as recently as of the date of the execution of the search

warrant at the defendant's home in late April, 2025.

Exhibiting characteristically poor impulse control, the defendant couldn't help but brag about his newfound status as a "cartel lawyer" to anyone in the Anchorage legal community who might listen:



Following the suspension of his license to practice law in February 2025, the defendant appears to have transitioned entirely to supporting himself through the distribution of narcotics, primarily fentanyl to drug-dependent and vulnerable women. In one particularly heartbreaking exchange in December 2024, the defendant urged a pregnant woman looking for work as a housecleaner to exchange sex for $80 and a small amount of methamphetamine, only to ultimately short-change the woman by $20.

The defendant's operational security as a drug dealer was as competent as his legal

practice, witnessed by the exchange with a customer excerpted below that occurred shortly before his home was searched:

[4/19/2025 10:58:05 AM(UTC-8)] **CUSTOMER**: Do u have a 7

[4/19/2025 11:16:31 AM(UTC-8)] **FACEY**: A 7? Like a quarter piece?

[4/19/2025 11:17:31 AM(UTC-8)] **CUSTOMER**: Yes

[4/19/2025 11:19:00 AM(UTC-8)] **FACEY**: can get one - but fyi it's measured in 'pieces,' for some reason, which is 25 gs, so a Qp is 6.25. Makes no fucking sense, but that's how it's done across the board.

[4/19/2025 11:20:05 AM(UTC-8)] **CUSTOMER**: Up [methamphetamine] right?

[4/19/2025 11:20:55 AM(UTC-8)] **FACEY**: Haha no sorry. Fetty [fentanyl powder]. Up is done the normal way. My bad. I don't have that [methamphetamine] ATM [at the moment], but can get it.

[4/19/2025 12:06:11 PM(UTC-8)] **FACEY:** Going to get that for you now. Meet at my place in 30?

  b. **Risk of Flight**

In addition to his willingness to assist in the flight of a DTO member out of Alaska while working for HSR, the defendant has extensive history of travel outside of the United States, and has recently indicated a renewed interest in leaving Alaska following the suspension of his license to practice law as evidenced by the recent communications and social media post excerpted below:











Unknown (owner)

I'm being a little dramatic, but I took almost all of that poker money, bought gold with it, and left it in a safe deposit box in Panama on my way home from Bolivia. Trying to force myself to have retirement savings.

5/2/2022 8:21:15 PM(UTC-8)

Sources (1)

Unknown (owner)

Oh. Yeah. I'll pack on the way to the airport, per usual. And my passport lives in my bugout bag.

12/7/2024 12:37:24 AM(UTC-9)

[redacted]

justin facey

All Posts People Videos Groups Pag

**RV Life - storage, tips and tricks- Moderated** ···

Justin Facey · Mar 23 ·

Heya! I'm right in the middle of an unexpected, abrupt major life and career implosion, and I've decided to embrace the silver lining.

I have two RVs that I did cosmetic makeovers over the past 5 years, and rent as a side hustle. A month ago, I acquired a much more involved project RV for $600, and was just pondering what to do and where to start when my job suddenly disappeared.

After kicking it around with my daughter for a week or so, we've decide that she and I and my 18-month old granddaughter are going to sell everything but the project camper and leave Alaska, with no specific plan in mind but to roam the earth for a bit until something or somewhere grabs our attention.

Yesterday we started the demolition phase of the project, and now that we have essentially a blank canvas, we're deciding what to build in it. Here for ideas, help when we get stuck, and to connect with other folks doing what we're looking to do. Specifically looking for ways to maximize our sitting area and storage. As you can see, we're ripping out the old furniture and likely going to build something in it's place. Suggestions

Home Friends Video Dating Notifications Menu

## III. ARGUMENT

As a disgraced attorney willing to exploit his clients, deceive the court and prostitute himself to a sophisticated DTO, the defendant poses both a unique danger to the community and a risk of actual flight, and there are no conditions or combinations of conditions short of detention that will reasonably assure his appearance and the safety. See, e.g. United States v. Hoover, No. CR-14-554-1-PHX-SRB, 2014 WL 2094201, at *5 (D. Ariz. May 20, 2014) (concluding that no combination of release conditions would reasonably assure defendant's appearance given his "significant patterns and practices of criminal deception," extensive foreign connections, and access to substantial financial assets); United States v. Seif, CR-01-0977-PHX-PGR, 2001 WL 1415034, at *3 (D. Ariz. Nov. 8, 2001) (noting that given defendant's past deception, his promise to appear at future court proceedings was "likely unreliable and trustworthy" and deserving of "little weight"); Townsend, 897

U.S. v. FACEY
3:25-cr-00033-SLG-KFR

Page 10 of 12
Case 3:25-cr-00033-SLG-KFR    Document 7    Filed 05/21/25    Page 10 of 12

F.2d at 995 (9th Cir. 1990) (noting that defendants had a greater incentive to flee when faced with the possibility of lengthy prison sentences); United State v. Ford, No. 3:19-CR-00112-TMB-MMS-3, 2020 WL 2857999, at *2 (D. Alaska June 2, 2020) (finding "potential for a lengthy term of incarceration" among the reasons to detain defendant); United States v. Garivay, No. CR-13-1070-PHX-SRB, 2013 WL 6577320, at *4 (D. Ariz. Dec. 16, 2013) (considering "a likely significant prison sentence" in detaining defendant).

As witnessed in the conduct giving rise to the indictment in this matter and the sheer number of pending Bar grievances, there is no precedent in our District for misconduct on this scale by a formerly practicing attorney. "As the Ninth Circuit specifically recognizes, conditions of release depend largely on the Defendant's good faith—or lack of it. If conditions can too easily be circumvented or manipulated, they are not effective." United States v. Petersen, 557 F. Supp. 2d 1124, 1130-1131 (E.D. Cal. 2008) (citing United States v. Hir, 517 F.3d 1081, 1093 (9th Cir. 2008) (quoting United States v. Tortora, 922 F.2d 880, 887, fn. 11 (1st Cir.1990))).

## IV. CONCLUSION

No matter how restrictive, all sets of release conditions "contain one critical flaw. In order to be effective, they depend on [the defendant's] good faith compliance." Hir, 517 F.3d at 1092 (citing United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990)). There is no basis on the record before the court to place any trust in the defendant's 'good faith compliance' with any release conditions given the scale of his misconduct. The defendant must be detained pending trial on this or any superseding indictment. If the court is inclined

to consider release following the detention hearing, the United States respectfully requests a stay of any release order pending review by the District Court pursuant to 18 U.S.C. § 3145(a)(1).

RESPECTFULLY SUBMITTED May 21, 2025 at Anchorage, Alaska.

WILLIAM M. NARUS
Acting United States Attorney
District of Oregon

/s Adam Alexander
ADAM ALEXANDER
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2025 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s Adam Alexander

U.S. v. FACEY
3:25-cr-00033-SLG-KFR

Page 12 of 12
Case 3:25-cr-00033-SLG-KFR   Document 7   Filed 05/21/25   Page 12 of 12