IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:25-cr-00033-SLG-KFR |
| Plaintiff, | |
| vs. | |
| JUSTIN ABBOTT FACEY, | |
| Defendant. | |



## MOTION FOR SUBSTITUTION OF COUNSEL OR IN THE ALTERNATIVE FOR HYBRID REPRESENTATION

**Comes now** defendant Justin Facey, acting *pro se* for the limited purpose of filing the instant motion only, and requests this court to order a substitution of counsel or, in the alternative, to allow hybrid representation in this matter by granting Defendant co-counsel status. This request is made under the Sixth Amendment to the United States Constitution or, in the alternative, under the court's discretionary authority under 18 U.S.C. 3006A to provide substitute counsel in the interests of justice or the court's precedential discretionary authority to allow hybrid representation.

### FACTS

The defendant will provide only a brief recitation of the facts undergirding this request, to maintain the privilege in the extremely limited communication that has existed to this point with assigned counsel. Defendant has been subjected to seven months of pre-trial incarceration without a detention review hearing. Assigned lead counsel refuses to have any contact with defendant, aside from several brief meetings either immediately before or after court appearances, most recently in July. Defendant has no mechanism to reach counsel by telephone or even to leave a voicemail or contact lead counsel's staff. Counsel likewise refuses to set up calls to the defendant, avail himself of the attorney-inmate email process, or even send written legal mail. As of this writing, over 180 days have

elapsed since counsel's assignment, during which the defense has ostensibly been preparing for trial, but to date defendant has been provided no written correspondence, no explanation of potential defenses, and no discussion regarding potential legal strategies, if indeed any are being contemplated.

Though discovery is ostensibly so voluminous that counsel agreed to declare the case complex, thereby waiving defendant's rights under the Speedy Trial Act - without discussion with defendant – to date, not a single page of discovery has been provided to defendant despite numerous requests. The appointment of a local second-chair has given defendant an opportunity to meet with an attorney and provided a working phone number, which has been a significant improvement, but to defendant's knowledge, lead counsel has proven no more responsive to the local second chair counsel than he has been to defendant, with the end result that nearly two more months have elapsed, with defendant still having no word regarding progress (if any) in preparing a defense, no opportunity to view discovery, and no ability to assist in preparing his own defense. For all intents and purposes, defendant has been left to fend for himself. Additionally, counsel has made several comments that have left serious doubt in defendant's mind regarding counsel's willingness to pursue this case as an adversarial proceeding, leading to a lack of trust on defendant's part.

## ARGUMENT

Under the United States Constitution, defendant "enjoys the right to...have the assistance of counsel for his defense."[1] The Supreme Court, in defining the contours of this right, has stated that it is an "obvious truth" the "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."[2] While the Sixth Amendment does not require that defendants availing themselves of appointed counsel be able to choose "a specific lawyer appointed by the court and paid for by the public," "forcing a defendant to go

---

1 U.S. Const. Amend. VI.
2 *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel."[34] Irreconcilable conflict is present in a variety of contexts, including situations where "a criminal defendant has, with legitimate reason, completely lost trust in his attorney."[5] "A serious breakdown in communication can result in" the constructive denial of counsel.[6] Indeed, where, as is the case here, "a complete breakdown in communication between the attorney and client prevents effective assistance of counsel," the defendant is constructively denied the effective assistance of counsel.[7]

While present lead counsel may be, generally speaking, competent, and while the court may be comfortable with counsel's refusal to communicate with defendant, "a serious breakdown in communications can result in an inadequate defense."[8] Since "a defendant is denied his Sixth Amendment right to counsel when he is 'forced into a trial with the assistance of a particular lawyer with whom he is dissatisfied, with whom he will not cooperate, and *with whom he [will] not, in any manner whatsoever, communicate,*" "a court may not deny a substitution motion simply because it thinks current counsel's representation is adequate."[9][10] The proper inquiry must delve into "the attorney client relationship and not the comfort of the court or the competency of the attorney."[11]

In a case like that currently before the court where defendant has been categorically unable to "confer with his counsel about trial strategy or [additional] evidence, or even receive explanations of the proceedings…" cooperation has been rendered impossible by the lack of communication.[12] This leads inexorably to the precise result cautioned against by the *Brown* court, where a defendant is "left to fend for himself" and thus faces a Hobson's choice of either proceeding with constitutionally

---

3   *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010).
4   *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007).
5   *United States v. Velazquez*, 855 F.3d 1021, 1033-34 (9th Cir. 2017).
6   *United States v. Nguyen*, 262 F.3d 998, 1003 (9th Cir. 2001).
7   *Stenson* at 886.
8   *United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000).
9   *Nguyen* at 1004 (quoting *Brown v. Craven*, 424 F.2d 1166, 1169) (emphasis added).
10  *Daniels v. Woodford*, 428 F.3d 1181, 1198 (9th Cir. 2005).
11  *Nguyen* at 1003.
12  *id. at 1005*.

inadequate representation or proceeding *pro se* without even the nominal assistance of such absentee counsel.[13] Whichever of these two constitutionally violative options the defendant chooses, "the end result is the same. Under either circumstance the defendant is deprived of the constitutionally guaranteed right to have effective assistance of counsel."[14]

Crucially, "because the Sixth Amendment's guarantee of effective assistance of counsel applies at the plea-bargaining stage, constructive denial of counsel can occur at that phase just as it can at trial."[15] Defendant has, of course, no information about whether negotiation is occurring in this case or if resolution is even a possibility, making it very likely that constructive denial of counsel has already occurred with respect to negotiation of a potential resolution and will continue unabated until new counsel is substituted. This sort of "complete lack of communication constitutes sufficient conflict to warrant the substitution of new counsel."[16]

Even should the court find that the lack of communication, unwillingness to allow defendant to participate in his own defense, and complete loss of trust in counsel's willingness and ability to adequately represent defendant's interests has not deteriorated the attorney-client relationship to the point that a substitution of counsel is required by the Sixth Amendment, the court should nonetheless find that such a substitution would be in the interests of justice and order a substitution on that basis.

The Court may, "in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings."[17] Whether a substitution is in the "interests of justice is," of course, a "context-specific inquiry."[18] Under Ninth Circuit precedent, the court must consider three factors: 1) the adequacy of its inquiry into the conflict between counsel and client; 2) the extent of the conflict between counsel and client; and 3) the timeliness of the defendant's motion.[19]

---

13 *United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997).
14 *United States v. Williams*, 594 F.2d 1258, 1260 (9th Cir. 1979).
15 *Missouri v. Frye*, 566 U.S. 134, 143-144 (2012).
16 *United States v. Moore*, 159 F.3d 1154, 1159-60 (9th Cir. 1998).
17 18 U.S.C. 3006A(c).
18 *Martel v. Clair*, 565 U.S. 648, 663 (2012).
19 *Velazquez* at 1033.

With respect to the first factor, "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer."[20] This court entertained a similar inquiry roughly two months ago following counsel's motion for substitution. However, new information has come to light in the months since that hearing – and, crucially, two more months have elapsed during which defendant has received no further information regarding discovery, progress toward preparing a defense (if any has been made), negotiation aimed at possible resolution, or the scheduling of a detention review hearing, despite repeated entreaties by defendant utilizing all available means of communication. It is therefore necessary for the court to conduct an additional inquiry to resolve this motion.

Regarding the second factor – the extent of the conflict – the court should focus on whether there has been a "serious breach of trust" or a "*significant breakdown in communication that substantially interferes* with the attorney-client relationship."[21] As described above, and for further reasons that are more properly addressed in a sealed hearing, defendant has reached a point where he neither trusts present lead counsel nor is at all confident in or comfortable with his continued representation. Indeed, while defendant knows full well the pitfalls of self-representation and has no desire to proceed *pro se* in this matter, this matter has reached a point where defendant feels he is being forced to make the Hobson's choice discussed above. In sum, even should the court find that the conflict and complete lack of communication is not irreconcilable for Sixth Amendment purposes, it is undoubtedly the sort of conflict that 'substantially interferes' with the attorney-client relationship and is therefore ripe for permissive substitution in the interests of justice.

In weighing the final factor, the court is to "balance any resulting inconvenience and delay against the defendant's important constitutional right."[22] Defendant is attempting – for the second time – to effectuate the requested substitution well in advance of trial. The next scheduled hearing is still

---

20 *id.* at 1034.
21 *id.* at 1036 (emphasis added).
22 *id.* at 1036-37.

several weeks away, at which time a trial date is to be chosen. Accordingly, this motion will not result an any appreciable delay and is thus timely.

Upon consideration of the requisite factors above, the court should find that the Sixth Amendment requires substitution of counsel in this case or, in the alternative, that substitution is in the interests of justice and exercise the discretion vested in the court to order such a substitution.

## ALTERNATIVE REQUEST FOR HYBRID REPRESENTATION

If the court declines to grant defendant's motion on either of the two grounds discussed above, defendant alternatively moves the court to allow hybrid representation, specifically the granting of co-counsel status to defendant.

The Ninth Circuit has observed that "the Supreme Court and this circuit have recognized the efficacy of hybrid representation to aid *pro se* defendants and protect the integrity of the trial process."[23] While an accused does not have a Sixth Amendment right to hybrid representation, "a district judge may allow 'hybrid representation,' in which the accused assumes some of the lawyer's functions, under certain circumstances."[24] Hybrid representation can refer to either of two distinct forms of representation. The first is advisory counsel, where a defendant proceeds *pro se* but receives "technical assistance" from an attorney who otherwise "does not participate in the actual conduct of the trial."[25] The second, and sort being requested here, is co-counsel, which describes a situation when "the attorney may participate directly in the trial proceedings with the defendant (examining witnesses, objecting to evidence, etc.)."[26] The decision to allow hybrid representation, and the precise contours of that arrangement, is a matter committed to the sound discretion of the trial court.[27]

As discussed above, defendant in this case has grave concerns that he is being constructively denied the assistance of counsel due to the inaction and uncommunicative nature of present lead

---

23 *Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir. 1983).
24 *United States v. Turnbull*, 888 F.2d 636, 638 (9th Cir. 1989).
25 *Locks* at 407.
26 *id.*
27 *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981).

Counsel, and has lost trust in counsel's willingness to represent defendant's interests based on comments and attitudes expressed by counsel. Importantly, defendant in the case is an attorney, albeit one with a suspended license. Defendant wishes to be allowed to review discovery, negotiate with opposing counsel, and possibly file motions should a review of discovery reveal that motion practice is warranted. This request is grounded in a desire to "protect the integrity of the trial process," which as the court noted in *Frye*, can only be meaningfully guaranteed if it is adhered to in the pre-trial motion and plea-bargaining stages as well.[28][29]

## CONCLUSION

Based on the foregoing, defendant requests this court to order substitution of counsel under the Sixth Amendment to the United States Constitution or under the court's discretionary authority under 18 U.S.C. 3006A. In the alternative, if defendant is to be forced to proceed with current counsel, defendant requests the court exercise its discretionary authority to allow defendant to proceed as co-counsel for the limited purposes described above.

## DECLARATION UNDER PENALTY OF PERJURY

To the best of my knowledge, the statements contained in this filing are true and complete under penalty of perjury.

11/24/2025
Date

Justin Facey, Defendant appearing *pro se*

Certificate of Service
I hereby certify that on 11/24/25 copies of this motion were served upon the following parties by United States Mail:
Nicholas Vieth, lead defense counsel
Assistant United States Attorney Adam Alexander

---

28 *Locks* at 407.
29 *Frye* at 144.

Justin FACEY 772218

Anchorage Correctional Complex
1400 E 4th Ave
Anchorage, AK 99501-2857



ALASKAN FRONTIER
995-997
26 NOV 2025 PM

LEGAL & CONFIDENTIAL

U.S. District Court
office of the clerk
222 W. 7th Ave. #4
Anchorage, AK. 99501

Anchorage Correctional Complex
This mail was sent by an inmate at an Alaska jail
Please do not send cash in the mail.

LEGAL & CONFIDENTIAL

99501-750404

