SCOTT BARDFORD
United States Attorney
District of Oregon

JENNIFER IVERS
ADAM ALEXANDER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: jennifer.ivers@usdoj.gov and adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN ABBOTT FACEY,<br><br>Defendant. | No. 3:25-cr-00033-TMB-MMS |

**OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE ON CONDITIONS**

COMES NOW the United States by and through undersigned counsel to join United States Probation and Pretrial Services in moving for the Defendant's continued detention pending trial in this matter. The United States opposes reopening detention pursuant to 18 U.S.C. §3142(f)(2) as there is no new information not known to the Defendant at the time of the initial detention hearing in this matter that has a material bearing on the issue of

whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person and the community.

If this court finds that there is new material information not known to the defendant at the time of the initial detention hearing, the record compels a finding that there are no such conditions that can be imposed. If this court is inclined to order the defendant's release, the United States respectfully requests a 48-hour stay of any contemplated release order to pursue a motion to revoke that order pursuant to 18 U.S.C. §3145. This motion in opposition is intended to supplement rather than substitute for the government's prior motion for detention in this matter.  ECF Doc. 7.

## I.       PROCEDURAL POSTURE AND APPLICABLE LAW

The Defendant was first charged by the Grand Jury with maintaining a drug-involved premises in violation of 21 U.S.C. § 856; possession of a firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and possession of firearms by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8).  ECF Doc. 2. Following his indictment, the United States was entitled to a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(B), (C), (E) and the defendant was subject to the rebuttable presumption that no condition or combination of conditions would reasonably assure his appearance and the safety of the community given the probable cause determination that he has committed both an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and an offense under section 924(c). 18 U.S.C. § 3142(e)(3)(A), (B). The United States filed a motion for detention, which this

U.S. v. Facey
3:25-cr-00033-TMB-MMS            Page 2 of 15
Case 3:25-cr-00033-TMB-MMS      Document 103      Filed 03/19/26      Page 2 of 15

subsequent pleading is intended to supplement. ECF Doc. 7. The Defendant was subsequently ordered detained pending trial. ECF Doc. 17.

Since the date of that initial order of detention, the Grand Jury has returned a superseding Indictment charging the Defendant with Possession of Controlled Substances with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and (C); Maintaining a Drug-Involved Premises in violation of 21 U.S.C. § 856(a)(1); Possession of Methamphetamine with Intent to Distribute with a Minor Present in violation of 21 U.S.C. 860a; Possession of a Firearm in Furtherance of Drug Trafficking Crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Possession of Firearms by a Prohibited Person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). ECF Doc. 31. These offenses once again invoke the rebuttable presumption that there are no conditions or combination of conditions the court can impose that can address the risk of flight or the danger to the community. 18 U.S.C. § 3142(e)(3)(A), (B). The Defendant's further detention was ordered by this court following his arraignment on the first superseding Indictment. ECF Doc. 39.

The Bail Reform Act "mandates the release of a person pending trial unless the court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." United States v. Hir, 517 F.3d 1081, 1085–86 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)).

The Defendant, however, is not entitled to reopen the matter of detention as a matter of right. 18 U.S.C. § 3142(f)(2). As a threshold matter, it is his burden to establish that

U.S. v. Facey
3:25-cr-00033-TMB-MMS          Page 3 of 15

"information exists that was not known to the movant at the time of the [initial] hearing **and** that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Id. (emphasis supplied). Courts interpret this requirement strictly. United States v. Spurlock, No. 3:23-CR-00022-MMD-CLB, 2024 WL 3850395, at *4 (D. Nev. Aug. 16, 2024) (citing United States v. Bararia, No. 2:12-cr-00236-MMD-GWF, 2013 WL 1907782, at *4 (D. Nev. Mar. 12, 2013); United States v. Ward, 63 F.Supp.2d 1203, 1206-07 (C.D. Cal. 1999); United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991)). See also United States v. Bowens, 2007 WL 2220501, *1 (D.Ariz. July 31, 2007) (citing United States v. Hare, 873 F.2d 796 (5th Cir.1989) (testimony of defendant's family and friends is not new evidence to warrant reopening of detention)).

The fact that the Defendant would very reasonably prefer to attend drug treatment and live with his prosperous and admirably supportive parents in scenic Rutland, Vermont than remain detained pending trial as previously ordered does not constitute "new information not known to the movant at the time of the initial hearing" that has "a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." If this Court does rule over the government's objection that the Defendant has met this threshold burden, it will be the government's burden to again prove that the Defendant is a danger to any other person and the community by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). The government bears the burden of proving that he is a flight risk by a preponderance of the evidence of the evidence. United States v. Motamedi,

Case 3:25-cr-00033-TMB-MMS     Document 103     Filed 03/19/26     Page 4 of 15

767 F.2d 1403, 1406 (9th Cir. 1985). The government has and will again prove both beyond a reasonable doubt.

If this court is inclined to order the Defendant's release, the United States will move for a 48-hour stay of any release order pending de novo review by the District Court pursuant to 18 U.S.C. § 3145. See, e.g. United States v. Moon, No. CR-22-00700-001-PHX-DWL, 2025 WL 2879750, at *1 (D. Ariz. Oct. 9, 2025) ("Additionally, as many courts have recognized, "[a] necessary adjunct to the authority to review is the authority to stay") (citing United States v. Trinidad-Acosta, 2011 WL 5546547, *1 (D. Me. 2011); United States v. Jubert, 2023 WL 5831098, *2 (S.D. Miss. 2023) ("[W]hile Section 3145 does not expressly authorize a stay...the absence of stay authority could render the district court's review power illusory") and United States v. Brigham, 569 F.3d 220, 230 (5th Cir. 2009).

## II.    FACTS

The prior proffer by the United States, consisting largely of the Defendant's own statements, is reincorporated by reference. ECF Doc. 7. Since the time of the initial detention hearing in this matter, additional facts have developed that only serve to strengthen the government's argument that the Defendant poses both a danger to the community and a risk of flight. In fact, the Defendant, by his own admission, poses the highest risk of each imaginable, and has conclusively demonstrated that the court can place no trust in any representations he makes directly or through counsel regarding any newfound willingness to abide by the law and court orders.

//

U.S. v. Facey
3:25-cr-00033-TMB-MMS            Page 5 of 15
Case 3:25-cr-00033-TMB-MMS      Document 103      Filed 03/19/26      Page 5 of 15

The Defendant knows that the United States has overwhelming evidence of serious criminal conduct spanning years, much of which has already been described in his own words in the initial motion for detention.  ECF Doc. 7.



In one telling exchange excerpted above, the Defendant tells an associate that he needs to wipe his phone because "there's probably enough incriminating shit hidden in the cellebrite info to put me away for a dozen lifetimes." That estimate may well be prescient, and context for his understandable concern can be found in other text threads.

### a. The Defendant Represents an Overwhelming Risk of Flight

As recounted in the prior memo and elaborated further here below, the Defendant has traveled extensively outside of the United States, and has bragged to friends, colleagues in the legal community and criminal co-conspirators about his assets overseas, and his willingness to flee the United States for a non-extraditable jurisdiction in the event that he faces criminal prosecution. The fact that he was not given the opportunity to flee prior to his arrest in this matter should give the court no confidence that he will decline to avail himself of the same opportunities should he be released. For example, in the exchange excerpted below, the Defendant tells an associate that he's in trouble with the IRS (the least of his current concerns to be sure) and brags that he has made $85,000 "on Bitcoin" and "squirreled every fucking penny."

//

U.S. v. Facey
3:25-cr-00033-TMB-MMS                Page 6 of 15
Case 3:25-cr-00033-TMB-MMS      Document 103     Filed 03/19/26     Page 6 of 15

He also writes in the excerpt below that he has "around three hundred K in gold, silver, platinum, and crypto stashed in safe deposit boxes at various third world banks." The Defendant then states **"I can always cut and run and live fairly well for quite a while."**



The defendant has also bragged to a colleague in the defense bar about forging travel related documents during a drug and prostitution frolic in Mexico in the excerpt below, describing his efforts as "annoying in the moment, but I guess getting on a flight that I purchased months in advance without being charged again via a series of willful misstatements of fact, some internation wire fraud, and a little razzle dazzle isn't a terrible day's work." He also describes his efforts to smuggle cocaine diluted into a solution stored in Visine brand eye drop bottles from Mexico back into the United States, demonstrating initiative his fellow attorney praised as "strong work."



We know the story about the forged documents is more than mere cocaine fueled puffery because we have also recovered the text messages between the Defendant and the overseas forger he hired to falsify the documents in question, as seen in the excerpt below.



Case 3:25-cr-00033-TMB-MMS      Document 103      Filed 03/19/26      Page 8 of 15

## b. The Defendant Poses an Unacceptable Danger to the Community

Sensing the metaphorical noose of criminal liability slowly tightening, the Defendant made further repeated references to travel outside the United States, this time to a childhood friend back east as seen below.







Case 3:25-cr-00033-TMB-MMS        Document 103        Filed 03/19/26        Page 9 of 15

The Defendant's primary concern regarding legal liability was not his exposure as a self-described "cartel lawyer" (described in greater detail in the prior memo) but his sexually exploitive relationship with a juvenile client he represented before being fired from the Office of Public Advocacy for, among other reasons, misconduct related to that client. In another telling exchange with the same childhood friend, the Defendant moves certain portions of the conversation to the encrypted platform Signal, but in clear text has the following exchange, where the friend states "You think they can trump up SA charges without evidence or a cooperating victim and make it stick?" to which the Defendant responds **"I won't allow myself to be arrested, I've 100% made my mind up on that."**





//

//

In another exchange in the same conversation, the Defendant writes his friend "in time this will calcify into hate and make me better . . . [b]ut I have to admit, it's fucking terrifying to know that at any second they might snatch you up and you many never get out. . . It's fucking nuts to walk around hoping that if they come, **you'll have time to get a shot off and make them kill you, because the alternative is worse.**" (Emphasis supplied).



Since the date of the Defendant's initial detention hearing, the DEA was contacted by a former client who the Defendant briefly and ineffectively represented from a period of time in a very serious state criminal matter, and in the course of that representation admitted that he had sexually exploited his former juvenile client, consistent with the elliptical references in the conversations quoted above between the Defendant and his childhood friend.

//

//

//

U.S. v. Facey
3:25-cr-00033-TMB-MMS  Page 11 of 15
Case 3:25-cr-00033-TMB-MMS    Document 103    Filed 03/19/26    Page 11 of 15

4. As the conversation progressed, SOI2 advised SA Rose of a sexual relationship FACEY had with his adopted daughter. FACEY told SOI2 that he had a sexual relationship with a juvenile female, who he represented in a murder case, and subsequently adopted her. FACEY told SOI2 that he became concerned when the FBI was investigating the sexual relationship between FACEY and the juvenile female. FACEY then told SOI2 that he was making homemade IED's (Improvised Explosive Devices) so he could kill law enforcement. SOI2 advised they never saw the IED's, and this conversation occurred approximately a year and a half ago.

Again, consistent with his statements to the childhood friend, the Defendant also made sincere threats to harm law enforcement should he have the opportunity.

6. Towards the end of the conversation, SOI2 advised SA Rose their main reason for submitting the tip was for the safety of law enforcement. FACEY had stated, on more than one occasion, to SOI2, that he is going to kill law enforcement and will not let law enforcement arrest him. SOI2 then advised SA Rose that FACEY is willing, ready, and excited to kill law enforcement.

That former client was so concerned regarding the Defendant's risk of flight and danger to the community that he or she contacted the DEA and agreed, on advise of current counsel, to participate in two recorded interviews, the second of which is summarized in pertinent part below.

4. SOI2 described FACEY as a habitual overshare and explained that FACEY hated law enforcement. FACEY told SOI2 that the FBI was actively investigating him for his relationship with his juvenile adopted daughter, who FACEY had represented. SOI2 believed the relationship between the two of them was more nefarious and not typical of a father daughter relationship. SOI2 stated that FACEY at one point stated they were in a relationship.

To be clear – the former client (SOI2) – himself charged with a very serious offense, was so troubled by Facey's patent degeneracy and threats to law enforcement that he or she, *on their own initiative* reached out to the DEA to alert the United States to their concerns regarding the Defendant's danger to the community and risk of flight.

//

//

U.S. v. Facey
3:25-cr-00033-TMB-MMS          Page 12 of 15

5. During the FBI investigation into FACEY, FACEY was concerned and told SOI2 that he had made improvised explosive devices (IED's) to kill law enforcement if they attempted to arrest him. SOI2 also explained that FACEY rejoiced in the idea of shooting or killing law enforcement. When FACEY learned that the juvenile female was interviewed by the FBI, his resolve to harm law enforcement increased. However, SOI2 explained that FACEY was proud of the juvenile female after the interviewed as she did not disclose the extent of their relationship. SOI2 specifically recalled FACEY stating that the juvenile female "did not crack" during the interview. *AGENTS NOTE: The juvenile female and allegations of an inappropriate sexual relationship had previously been known to investigators.*

The defendant, by his own admissions and in his own words, is a drug-addicted child sex offender who makes credible threats against law enforcement of such significance that former clients, on their own initiative, have reached out to the United States to express very sincere concerns regarding his dangerousness should he be released from custody.

### III. ARGUMENT

As a disgraced former attorney willing to abuse his clients and deceive the court and prostitute himself to a sophisticated DTO while prostituting his many victims of sexual exploitation, the defendant poses a unique danger to the community and risk of flight even setting aside his credible threats to "**get a shot off and make them kill you, because the alternative is worse,**" and there are no conditions or combinations of conditions short of detention that will reasonably assure his appearance and the safety.  See, e.g. United States v. Hoover, No. CR-14-554-1-PHX-SRB, 2014 WL 2094201, at *5 (D. Ariz. May 20, 2014) (concluding that no combination of release conditions would reasonably assure defendant's appearance given his "significant patterns and practices of criminal deception," extensive foreign connections, and access to substantial financial assets); United States v. Seif, CR-01-0977-PHX-PGR, 2001 WL 1415034, at *3 (D. Ariz. Nov. 8, 2001) (noting that given

U.S. v. Facey
3:25-cr-00033-TMB-MMS          Page 13 of 15

defendant's past deception, his promise to appear at future court proceedings was "likely unreliable and trustworthy" and deserving of "little weight"); Townsend, 897 F.2d at 995 (9th Cir. 1990) (noting that defendants had a greater incentive to flee when faced with the possibility of lengthy prison sentences); United State v. Ford, No. 3:19-CR-00112-TMB-MMS-3, 2020 WL 2857999, at *2 (D. Alaska June 2, 2020) (finding "potential for a lengthy term of incarceration" among the reasons to detain defendant); United States v. Garivay, No. CR-13-1070-PHX-SRB, 2013 WL 6577320, at *4 (D. Ariz. Dec. 16, 2013) (considering "a likely significant prison sentence" in detaining defendant).

As witnessed in the conduct giving rise to the indictment and superseding indictment in this matter and the sheer number of pending Bar grievances, there is no precedent in our District for misconduct on this scale by a formerly practicing attorney. "As the Ninth Circuit specifically recognizes, conditions of release depend largely on the Defendant's good faith—or lack of it. If conditions can too easily be circumvented or manipulated, they are not effective." United States v. Petersen, 557 F. Supp. 2d 1124, 1130-1131 (E.D. Cal. 2008) (citing United States v. Hir, 517 F.3d 1081, 1093 (9th Cir. 2008) (quoting United States v. Tortora, 922 F.2d 880, 887, fn. 11 (1st Cir.1990))).

## IV.   CONCLUSION

No matter how restrictive, all sets of release conditions "contain one critical flaw. In order to be effective, they depend on [the defendant's] good faith compliance." Hir, 517 F.3d at 1092 (citing United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990)).   There is no basis on the record before the court to place any trust in the defendant's 'good faith compliance' with any release conditions given the scale of his misconduct.  The defendant

U.S. v. Facey
3:25-cr-00033-TMB-MMS          Page 14 of 15
Case 3:25-cr-00033-TMB-MMS          Document 103          Filed 03/19/26          Page 14 of 15

must continue to be detained pending trial on this or any further superseding indictment. Even assuming, *arguendo*, that he has presented sufficient new information to merit reopening these proceedings, it cannot be argued that releasing the Defendant back to the community rebuts the presumption of detention that applies in this matter.

RESPECTFULLY SUBMITTED March 19, 2026 at Anchorage, Alaska.

SCOTT BRADFORD
United States Attorney
District of Oregon


s/ *Adam Alexander*
ADAM ALEXANDER
Assistant United States Attorney
United States of America

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 19, 2026 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ *Adam Alexander*

U.S. v. Facey
3:25-cr-00033-TMB-MMS          Page 15 of 15
Case 3:25-cr-00033-TMB-MMS     Document 103     Filed 03/19/26     Page 15 of 15